UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED** 16

MAR 2 4 2005

U.S. DISTRICT COURT
BAY CITY, MICHIGAN

05-70840
Hon. Rosen

UNITED STATES OF AMERICA,

Plaintiff,

-vs-

D-1 AHMAD MUSA JEBRIL
D-2 MUSA ABDALLAH JEBRIL,

Defendants.
_____/

| ASSISTANT U.S. ATTORNEY | ORLANS ASSOCIATES, P.C. |
|---|---|
| Julia C. Pidgeon (Penna Bar #37949) | Susan C. Myers (P49740) |
| Attorney for Plaintiff | Attorney for EMC Mortgage Corporation |
| 211 W. Fort Street | P.O. Box 5041 |
| Suite 2300 | Troy, MI 48007 |
| Detroit, MI 48226-3211 | (248) 457-1000 ext. 222 |
| (313) 226-9772 | |

_____/

### EMC MORTGAGE CORPORATION'S CLAIM OF INTEREST
### RE: 4702 PALMER, DEARBORN, MI

NOW COMES EMC MORTGAGE CORPORATION by and through its attorneys, ORLANS ASSOCIATES, P.C., and for its Claim of Interest Re: 4702 Palmer, Dearborn, MI states as follows:

1. On October 31, 1997, Abdullatic Alhussein executed a mortgage in favor of Long Beach Mortgage Company that was recorded in the Wayne County Register of Deeds in Liber 29793, Page 701 for property located at 4702 Palmer, Dearborn, MI and more particularly described as:

> Lot 289, Schaeffer Heights Subdivision, as recorded in Liber 32, Page 82
> of Plats, Wayne County Records.
>
> Tax# 82-09-134-06-027
> More commonly known as 4702 Palmer, Dearborn, MI

2. On February 6, 2004, Long Beach Mortgage Company assigned all of its right, title and interest in the mortgage to JP Morgan Chase Bank f/k/a The Chase Manhattan Bank successor by merger to Chase bank of Texas, N.A. f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian by

Saxon Mortgage Services, Inc., f/k/a Meritech Mortgage Services, Inc., its Attorney-in-fact ("JP Morgan Chase Bank"). An Assignment of Mortgage was recorded with the Wayne County Register of Deeds in Liber 40132, Page 408.

3. Alhussein defaulted on his mortgage and JP Morgan Chase Bank commenced foreclosure by advertisement proceedings.

4. On April 15, 2004, the Sheriff's sale was held with JP Morgan Chase Bank being the highest bidder at the public auction.

5. On May 17, 2004, JP Morgan Chase Bank executed a Quit Claim Deed transferring all right, title and interest it held in the above-described property to EMC Mortgage Corporation. The Deed was recorded with the Wayne County Register of Deeds in Liber 40701, Page 826.

6. The redemption period expired with Alhussein failing to redeem the property. Therefore, EMC Mortgage Corporation's interest in the property fully vested.

7. EMC Mortgage Corporation is the titleholder to the above-described real property and claims an interest in the criminal forfeiture action brought by the Plaintiff.

Respectfully Submitted:

ORLANS ASSOCIATES, P.C.

Susan C. Myers (P49740)
Attorney for EMC Mortgage Corporation
P.O. Box 5041
Troy, MI 48007
(248) 457-1000 ext. 222

Dated: March 18, 2005

2

JAN 26 1998

Liber-29793   Page-701.0
98053539L5  2/27/1998  08:57AM

$25.00 MORTGAGE
RECORDED
FOREST E. YOUNGBLOOD, REGISTER OF DEEDS
WAYNE COUNTY, MI
Receipt 850757

$4.00 REMONUMENTATION

# MORTGAGE

GLT 32.9758

When recorded, mail to:

LONG BEACH MORTGAGE COMPANY
P.O. BOX 11490
SANTA ANA, CA 92711

Loan No. 7319783-30324

THIS MORTGAGE ("Security Instrument") is given on   October   31 , 1997
The mortgagor is ABDULLATIF ALHUSSEIN, A Single Man

6129 FAUST STREET DETROIT, MI 48228                                        whose address is
("Borrower"). This Security Instrument is given to LONG BEACH MORTGAGE COMPANY

which is organized and existing under the laws of the State of Delaware
and whose address is 1100 TOWN & COUNTRY ROAD ORANGE, CA 92868
("Lender"). Borrower owes Lender the
principal sum of   Sixty Seven Thousand Five Hundred and no/100

Dollars (U.S. $   67,500.00   ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   November   1 , 2027   . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage,

MICHIGAN-Single Family-FNMA/FHLMC UNIFORM INSTRUMENT
Page 1 of 7
Form 3023 9/90
Amended 5/91

R mtg 25 4/R 7 pgs. 5

Liber-29793    Page-702.0

warrant, grant and convey to Lender, with power of sale, the following described property located in
WAYNE                                                County, Michigan:
LEGAL/DESCRIPTION ATTACHED HERETO AND MADE A PART A  A

LOT 289, SCHAEFER HEIGHTS SUBDIVISION, as recorded in Liber 32, Page 32
of Plats, Wayne County Records.


tax i.d. #82-09-134-06-027


which has the address of  4702 PALMER                    DEARBORN                  [Street, City],
Michigan   48126                                    [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits

-6R(MI) (9304)                         Page 2 of 7                        Initials: AM
Initials:                                                                 Form 3023  9/90
                                                                          Loan No. 7319783-30524

Liber-29793     Page-703.0

and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating

Form 3023  9/90
Loan No. 7319783-30324

Liber-29793    Page-704.0

circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days

-6R(MI) (9304)    Page 4 of 7    Initials: A B
   Form 3033 9/90
   Loan No. 7319783-30324

Liber-29793     Page-705.0

after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure

-6R(MI) (9764)          Page 5 of 7          Form 3023  9/90
                                              Loan No. 7319783-30324

Liber-29793    Page-706.0

that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give notice of sale to Borrower in the manner provided in paragraph 14. Lender shall publish and post the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall prepare and file a discharge of this Security Instrument without charge to Borrower.

GB -6R(MI) (9704)
(initials)

Page 6 of 7

Form 3023 9/90
Loan No. 7319783-4300

Liber-29793    Page-707.0

23. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] VA Rider

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider
- [ ] Other(s) (specify)

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____ (signature)

_____ (Seal)
ABDULLATIE ALHUSSEIN     -Borrower

PAUL BRUNSINK

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

STATE OF MICHIGAN,              WAYNE        County ss:

The foregoing instrument was acknowledged before me this 31st day of October,, 1997
by ABDULLATIE ALHUSSEIN, A single man

(person acknowledging)

My Commission Expires:  PAUL BRUNSINK
                        Notary Public, Wayne County, MI
                        My Commission Expires 11-27-2001

                        Notary Public,  PAUL BRUNSINK
                                        WAYNE County, Michigan

This instrument was prepared by  A. Smith
                                 Long Beach Mortgage Co.
                                 1100 town &Country Road
                                 Orange, CA  92868

SR(MI) (9706)

                                                    Form 3023  9/90
                                                    Loan No. 7319783-30324

MMSI#:10209117

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned,
LONG BEACH MORTGAGE COMPANY
c/o 4708 Mercantile Drive, Ft. Worth, TX 76137, (Assignor), 12th Fl, Houston, TX 77002, its successors by those presents does convey, grant, sell, assign, transfer and set over the described Mortgage together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to
JPMORGAN CHASE BANK FKA THE CHASE MANHATTAN BANK successor by merger to CHASE BANK OF TEXAS, NA FKA TEXAS COMMERCE BANK, NA as Trustee and Custodian by Saxon Mortgage Services, Inc, its Attorney-in-fact, whose address is 1111 Fanin 12th Fl, Houston, TX 77002, its successors or assigns (Assignee).
Said Mortgage made on 10/31/97 by
ABDULLATTIE ALHUSSEIN
to Long Beach Mortgage
and recorded in office of the Register of Deeds of WAYNE
County, Michigan, in Book 29793, Page 701   Doc# 98053S9LS on 02-27-1998
upon the property situated in said State and County, to wit:
SEE EXHIBIT 'A' ATTACHED
also known as 4702 PALMER
DEARBORN, MI 48126

dated: 02/06/04
LONG BEACH MORTGAGE COMPANY.

By: _____
Tom Carter, Vice President, Saxon Mortgage Inc.
As Successor in Interest.

_____
Marie Coe                  Witness

_____
Wayne Sever, Vice President   Witness

STATE OF Texas
COUNTY OF Tarrant
On 02/06/04, before me appeared Tom Carter, Vice President to me personally known, who being by me duly sworn, did say that he/she is the/an Vice President of Saxon Mortgage, Inc
and that said instrument was signed on behalf of said corporation.

_____
Vanita Mattson
Residing in the county of ____    Notary Public

Document Prepared By:
T.Temple/NTC, 2100 Alt 19 N., Palm Harbor, FL 34683
When Recorded Return To:

VANITA MATTSON
Notary Public, State of Texas
My Commission Expires 02-18-05

When recorded return to:
e-Title Company
PO Box 5041
Troy MI 48007-5041
2'/4 0744                 1t.

CON TM 3011T  Y

WAYNE County, Michigan:
*LEGAL DESCRIPTION ATTACHED/LEGAL AND/M ADD/LOAN1*

LOT 289, SCHAEFER HEIGHTS SUBDIVISION, as recorded in Liber 32, Page 82 of Plats, Wayne County Records.

tax i.d. A82-09-134-06-027

which has the address of 4702 PALMER
[Street, City],
Michigan 48126 DEARBORN
[Zip Code] ("Property Address");

APR 3 0 2004 10006569

**FILE DO NOT MAIL**



STATE OF MICHIGAN
WAYNE COUNTY
MAY 3 2004
RECEIPT #254537

REAL ESTATE TRANSFER TAX
$ 95.15-CO
$ 0.00-ST
STAMP #188482845

$95.15 TRANSFER TAX COUNTY
Receipt #204537

RECORDED
BERNARD J. YOUNGBLOOD, REGISTER OF DEEDS
WAYNE COUNTY, MI

$15.00 DEED

$6.00 RENOMINATION

$25.00 HANDLING FEES

### SHERIFF'S DEED ON MORTGAGE FORECLOSURE

THIS INDENTURE made the 15th day of April, 2004 between **Marshun Brooks**, a deputy sheriff in and for Wayne County, Michigan, party of the first part, and JPMORGAN CHASE BANK F/K/A THE CHASE MANHATTAN BANK SUCCESSOR BY MERGER TO CHASE BANK OF TEXAS, NATIONAL ASSOCIATION, F/K/A TEXAS COMMERCE BANK, N.A. AS TRUSTEE AND CUSTODIAN BY: SAXON MORTGAGE SERVICES INC. F/K/A MERITECH MORTGAGE SERVICES, 2 MacArthur 909 Hidden Ridge Drive, Irving, TX, 75038, party of the second part (hereinafter called the grantee).

Witnesseth, that whereas, Abdullatie Alhussein, A Single Man whose address is PO BOX 1109, Taylor, MI 49190, made a certain mortgage to Long Beach Mortgage Company (hereinafter called "Mortgagee"), which was duly recorded in the office of the Register of Deeds of Wayne County in Liber 29793, Page 701, Wayne County Records. Said mortgage is now held by JPMorgan Chase Bank f/k/a The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association, f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services by assignment submitted to and recorded by the Wayne County Register of Deeds.

WHEREAS, said mortgage contained a power of sale which has become operative by reason of default in the terms and conditions of the mortgage; and

WHEREAS, no suit or proceeding at law or in equity has been instituted to recover the debt secured by the mortgage or any part thereof; and

WHEREAS, by virtue of the power of sale, and pursuant to the statutes of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in the mortgage that the premises, or some part of them, would be sold on the 25th day of March, 2004*, at the Jefferson Avenue entrance to the Coleman A. Young Municipal Center in Detroit, that being the place of holding the Circuit Court for Wayne County wherein the premises are located; and

WHEREAS, pursuant to said notice I did, at 1:00 p.m., local time, on the date stated above, expose for sale at public venue the said lands and tenements described below, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of Eighty-Six Thousand Two Hundred Sixty-Five & 82/100 Dollars ($86,265.82), that being the highest bid therefore and the grantee being the highest bidder; and

WHEREAS, said lands and tenements are situated in the City of Dearborn, Wayne County, Michigan, and are more particularly described as:

Lot 289, Schaefer Heights Subdivision, as recorded in Liber 32, Page 82 of Plats, Wayne County Records.

Tax# 82-09-134-06-077
More commonly known as 4702 Palmer.

Now, this indenture Witnesseth, that I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain, and sell unto the grantee, its successors and assigns, FOREVER, all the estate, right, title, and interest which the said Mortgagor(s) had in said land and tenements and every part thereof, on 31st day of October, 1997, that being the date of said mortgage, or any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoove forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could, or ought to sell the same.

In witness whereof I have set my hand and seal.

_Marshun Brooks_
Deputy Sheriff in and for the County of Wayne, Michigan

STATE OF MICHIGAN,
COUNTY OF WAYNE

This Sheriff's Deed on Mortgage Sale was acknowledged before me this 15th day of April, 2004, by _Marshun Brooks_, Deputy Sheriff for Wayne County, Michigan.

_Notary Public_
RALPH LEGGAT
Wayne County, Michigan  Notary Public, Wayne County Michigan
My commission expires:  Commission Expires 03-30-2006

County Revenue Required.
Exempt from State Real Estate Transfer Tax pursuant to MCLA §207.526(u)

Adjourned from March 25, 2004 to April 15, 2004 by posting a notice of adjournment at the place of sale for Wayne County, Michigan.

File Number: 199.1501  Loan Type: CONV

## NON-MILITARY AFFIDAVIT

State of Michigan )
               )ss.
County of Oakland)

The undersigned, being first duly sworn, states that upon investigation he is informed and believes that none of the persons named in the notice attached to the sheriff's deed of mortgage foreclosure, nor any person upon whom they or any of them were dependent, were in the military service of the United States at the time of sale or for six months prior thereto; nor the present grantee(s).

The undersigned further states that this affidavit is made for the purpose of preserving a record and clearing title by virtue of the Soldiers' and Sailors' Relief Act of 1940, as amended.

David C. Lohr

Consuela D. Carbon
Notary Public
Oakland County, Michigan
My Commission Expires: 01/04/2006

File Name:    Abullatie Alhussein

**AFFIDAVIT OF AUCTIONEER and
CERTIFICATE OF REDEMPTION PERIOD**

State of Michigan
County of Wayne

Marshun Brooks being first duly sworn, deposes and says that he is a Deputy Sheriff of said Wayne County; that he/she acted as Auctioneer, and made the sale as described in the annexed Deed pursuant to the annexed printed notice; that said sale was opened at 1:00 p.m., local time, on the 15th day of April, 2004, Jefferson Avenue entrance to the Coleman A. Young Municipal Center in Detroit, that being the place of holding the Circuit Court for Wayne County, and said sale was kept open for the space of one hour; that the highest bid for the lands and tenements therein described was Eighty-Six Thousand Two Hundred Sixty-Five & 82/100 Dollars ($86,265.82);made by JPMorgan Chase Bank f/k/a The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association, f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services, that said sale was in all respects open and fair; and that he/she did strike off and sell said lands and tenements to said bidders, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes.

I DO HEREBY CERTIFY that the within Sheriff's Deed will become operative at the expiration of 6 months from the date of sale, unless determined abandoned in accordance with MCLA §600.3241a, in which case the redemption period will be 30 days from the date of sale, unless redeemed according to law, in such case made and provided. The foreclosing mortgagee can rescind the sale in the event a 3rd party buys the property and there is a simultaneous resolution with the borrower.

Deputy Sheriff
Wayne County, Michigan    Marshun Brooks

Subscribed and sworn to before me this fifteenth day of April, 2004.

Notary Public           RALPH LEGGAT
Wayne County, Michigan  Notary Public, Wayne County Michigan
My commission expires:  Commission Expires 10-30-2005

DRAFTED BY and when recorded return to:
Marshall R. Isaacs
ORLANS ASSOCIATES PC
P.O. Box 5041
Troy, MI 48007-5041
(248) 457-1090               File No. ORIGINAL

**AFFIDAVIT OF PUBLISHER**

THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY

**MORTGAGE SALE**

Default has been made in the conditions of a mortgage made by ABDULLA-TIE ALHUSSEIN, A Single Man, to Long Beach Mortgage Company, mortgagee, dated October 31, 1997 and recorded February 27, 1998 in Liber 29799, Page 701, Wayne County Records. Said mortgage is now held by JPMORGAN CHASE BANK f/k/a The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association, f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services by assignment submitted to and recorded by the Wayne County Register of Deeds. There is claimed to be due on such mortgage the sum of EIGHTY-FOUR THOUSAND ONE HUNDRED SIXTY-SIX AND 19/100 DOLLARS ($84,166.19) including interest at the rate of 10.75% per annum.

Under the power of sale contained in the mortgage and the statutes of the State of Michigan, notice is hereby given that the mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public venue at the Jefferson Avenue entrance to the Coleman A. Young Municipal Center in Detroit in Wayne County, Michigan at 1:00 p.m. on MARCH 24, 2004.

The premises are located in the City of Dearborn, Wayne County, Michigan, and are described as:

Lot 399, Schaefer Heights Subdivision, as recorded in Liber 32, Page 82 of Plats, Wayne County Records.

The redemption period shall be 6 months from the date of such sale, unless the property is determined abandoned in accordance with MCLA §600.3241a, in which case the redemption period shall be 30 days from the date of the sale. TO ALL PURCHASERS: The foreclosing mortgagee can rescind the sale in the event a 3rd party buys the property and there is a simultaneous resolution with the borrower. In that event, your damages, if any, are limited solely in the return of the bid amount tendered at sale.

Dated: February 23, 2004
ORLANS ASSOCIATES PC
Attorneys for JPMorgan Chase Bank f/k/a
The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services , As Assignee
P.O. Box 5041
Troy, MI 48007-5041
(248) 457-1000
File No. 244.0742

(2-23)(3-22)

State of Michigan ) ss.
County of Wayne )

The undersigned, being first duly sworn deposes and says that a notice, a true copy of which is annexed hereto, was published in The Detroit Legal News, a newspaper printed and circulated in said State and County on the February 23, March 1, 8, 15, 22, 2004. And that she is the principal clerk of the paper.

Resa T. Rodgers

Subscribed and sworn to before me this 22nd day of March, 2004.

Dawn M. Keith, Notary Public
Oakland County, Michigan
My Commission Expires: Dec. 18, 2007
Acting in Wayne County, Michigan

**AFFIDAVIT OF POSTING**
STATE OF MICHIGAN
COUNTY OF Wayne ss.

Jerry Williams, being duly sworn, deposes and says that on the 26th day of February, A.D., 2004, __he posted a Notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said Notice by attaching the same in a secure manner to the left side of door.

Jerry Williams

Subscribed and sworn to before me this 1st day of March, A.D. 2004.

Deborah L. Elick, Notary Public
Wayne County, Michigan
My Commission Expires: Nov. 19, 2007

File No. 244.0742

DRAFTED BY and when recorded return to:

Marshall R. Isaacs
ORLANS ASSOCIATES, P.C.
P.O. Box 5041
Troy, MI 48007-5041
(248) 457-1000

D3364 27 1 MAY 2 7 2004

e-Title Agency

LI-40701    Pn-826
204321530    5/27/2004
Bernard J. Youngblood
Wayne Co. Register of Deeds

## QUIT CLAIM DEED

THIS QUIT CLAIM DEED, Executed this ___May___ day of ___17___, 2004

by first party, Grantor, JPMorgan Chase Bank f/k/a The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association, f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services.
whose address is 2 MacArthur, Irving, TX 75038

to second part, Grantee, EMC MORTGAGE CORPORATION

whose address is 2 MacArthur 909 Hidden Ridge Drive Suite 200, Irving, TX 75038

WITNESSETH, That the said first party, for good consideration and for the sum of One Dollar ($1.00) paid by the said second party, the receipt whereof is hereby acknowledged, does hereby remise, release and quitclaim unto the said second party forever, all the right, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of Wayne, State of Michigan to wit:

Lot 289, Schaeffer Heights Subdivision, as recorded in Liber 32, Page 82 of Plats, Wayne County Records.
Tax ID: 82-09-134-06-027
Commonly known as: 4702 Palmer

Exempt from revenue stamps pursuant to MCLA 207.505(a) and 207.526(a)

IN WITNESS WHEREOF, The said first party has signed and sealed these presents the day and year first above written. Signed sealed and delivered in the presence of:

JPMorgan Chase Bank f/k/a The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association, f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services

By: _____
(Name) MARY JACQUE THOMPSON
Assistant Vice President

Its: _____ (Title)

State of Texas
County of Dallas

On the __17__ day of __May__, 2004 before me appeared __Mary J. Thompson__ personally known, who being by me duly sworn, he/she is the __Asst. Vice President__ of JPMorgan Chase Bank f/k/a The Chase Manhattan Bank successor by merger to Chase Bank of Texas, National Association, f/k/a Texas Commerce Bank, N.A. as Trustee and Custodian By: Saxon Mortgage Services Inc. f/k/a Meritech Mortgage Services, the corporation named in and which executed the within instrument personally known to me (or proved to me on the basis of satisfactory evidence) to be the company whose name is/are subscribed to the within instrument and acknowledged to me that he/she executed the same in authorized capacity and that by his/her signature on the instrument the person or the entity upon behalf of which the person acted, executed this document.

_____, Notary Public

Texas County, Dallas
My commission expires: 8-25-07

Sherylynn M. Jackson
Notary Public, State of Texas
My Comm. Expires 08/25/04

DRAFTED BY & RETURN RECORDED TO:
Marshall R. Isaacs
Orlans Associates PC
P.O. Box 5041
Troy, MI 48007
(248) 457-1000

File No.    199.1501

NO REVENUE ATTACHED

QCD (1) E(a) Sc

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED**

MAR 24 2005

U.S. DISTRICT COURT
BAY CITY, MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

-vs-

D-1 AHMAD MUSA JEBRIL
D-2 MUSA ABDALLAH JEBRIL,

    Defendants.

Criminal No: 03-80810
Hon. Robert Cleland

| ASSISTANT U.S. ATTORNEY<br>Julia C. Pidgeon (Penna Bar #37949)<br>Attorney for Plaintiff<br>211 W. Fort Street<br>Suite 2300<br>Detroit, MI 48226-3211<br>(313) 226-9772 | ORLANS ASSOCIATES, P.C.<br>Susan C. Myers (P49740)<br>Attorney for EMC Mortgage Corporation<br>P.O. Box 5041<br>Troy, MI 48007<br>(248) 457-1000 ext. 222 |
|---|---|

## PROOF OF SERVICE

The undersigned certifies that a copy of Defendant EMC Mortgage Corporation's Claim of Interest Re: 4702 Palmer, Dearborn and this Proof of Service were served upon the attorneys of record of all parties to the above action by mailing the same to them at their respective addresses as disclosed by the pleadings of record herein, with first-class postage fully prepaid thereon, on March 21, 2005, at Troy, Michigan.

I declare under the penalty of perjury that the above statement is true to the best of my information, knowledge and belief.

*/s/ Dannielle A. Molitor*
Dannielle A. Molitor