UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:  AHMAD MUSA JEBRIL and          No. 05-X-70840-DT
MUSA ABADALLAH JEBRIL,                 *Related to Crim. No. 03-80810*
_____/        Hon. Gerald E. Rosen

SUBHIEH JEBRIL,

          Petitioner,

vs.

UNITED STATES,

          Respondent.
_____/

OPINION AND ORDER DENYING PETITIONER'S
MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     May 6, 2008

PRESENT:  Honorable Gerald E. Rosen
                  United States District Judge

I. INTRODUCTION

Petitioner Subhieh Jebril is the wife of Musa Abdallah Jebril. Musa Jebril and his son, Ahmad Musa Jebril, were convicted by a jury in 2004 on 42 charges of conspiracy, bank fraud, wire fraud, money laundering, failure to file income tax returns and felon-in-possession of firearms and ammunition. (Ahmad Jebril was also convicted of fraudulent use of a social security number.) The jury also issued a Special Verdict ordering

1

forfeiture of $200,000 in United States currency and twelve real properties. Accordingly, Musa Jebril's interests in all of the properties and currency included in the indictment were extinguished. This ancillary proceeding was thereafter commenced to adjudicate the rights/interests of any third parties in the forfeited properties.

This matter is presently before the Court on the Motion for Summary Judgment filed by Subhieh Jebril for a conclusive adjudication in her favor on her claim of interest in three of the forfeited real properties located at 4957 Rosalie, Dearborn, Michigan; 4909 Rosalie, Dearborn, Michigan and 4637 Palmer, Dearborn, Michigan.[1] The Government has responded to Mrs. Jebril's Motion. Having reviewed the parties' briefs and supporting evidence, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets forth the Court's ruling.

## II. TITLE HISTORY OF THE SUBJECT PROPERTIES

<u>4637 Palmer, Dearborn, Michigan</u>

The title history of the Palmer Street residence shows that Musa Jebril and Petitioner Subhieh Jebril acquired this property in 1983 by warranty deed from John C.

---

[1] Mrs. Jebril also requested summary judgment as to her asserted interest in two other forfeited properties located at 5745 Greenview and 12000 Sanford, Detroit, Michigan. However, due to the uninhabitable state of these two properties and the expense it would incur to rehabilitate them, the Government is no longer asserting a claim to these parcels and these properties, accordingly, have been dismissed from the forfeiture proceedings. Mrs. Jebril's motion, as to these two properties, therefore, is rendered moot.

and Virginia M. Watts. They paid $42,000 for the property by obtaining a mortgage from the Prudential Insurance Company of America. Subsequently, on October 6, 1992, Musa and Subhieh Jebril executed a quit claim deed recorded on October 7, 1992, conveying the property to Sobhie Said Salem, "a single woman of 4637 Palmer Avenue, Dearborn, Michigan."[2]

4957 Rosalie, Dearborn, Michigan

The 4957 Rosalie property was acquired by Musa and Subhieh Jebril in 1979 for $15,000 from Mohamed A. and Hadieh J. Sion. On June 26, 1991, Mr. and Mrs. Jebril were granted a mortgage for $71,900.83 by Transamerica Financial Services. The following year, as they did with respect to the Palmer Avenue property, on October 6, 1992, Musa and Subhieh Jebril executed a quit claim deed recorded on October 7, 1992, conveying the property to Sobhie Said Salem, "a single woman of 4637 Palmer Avenue, Dearborn, Michigan."[3]

4909 Rosalie, Dearborn, Michigan

This house on Rosalie was obtained from Soubhy R. Haymour and Mable

---

[2] Evidence at the criminal trial was introduced showing that "Sobhie Said Salem" is a non-existent nominee owner to whom the various properties were transferred by the Jebril Defendants in furtherance of the criminal conspiracy. The trial evidence also showed that the 4637 Palmer residence served as the "office" of the Defendants and was the place from which the fraudulent conduct was generated.

[3] Taxes were not paid on this property in 2002 and 2003; consequently, the Wayne County Treasurer's Office pursued forfeiture. The property was redeemed when $1,621.65 was received as payment toward delinquent property taxes.

Haymour by Musa and Subhieh Jebril by warranty deed in 1967. On October 6, 1992, as with the other properties, the property was conveyed by quitclaim deed to Sobhie Said Salem. The property was again conveyed by quitclaim deed, dated January 29, 1993 but not recorded until September 10, 1998, by "Sobhie Said Salem" to Malacky Jebril, a daughter of Musa and Subhieh Jebril.[4]

### III. DISCUSSION

#### A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[5] According to the *Celotex*

---

[4] This property was also sought for foreclosure in 2002 by the Wayne County Treasurer's Office for non-payment of taxes. The taxpayer was listed as Sobhie Salem, despite the 1993 quitclaim deed to Malacky Jebril.

[5] "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials." 10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

4

Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> \* The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> \* The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> \* The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> \* The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply these standards in deciding Petitioner Jebril's Motion for Summary Judgment in

5

this case.

B.  **PETITIONER'S QUITCLAIM CONVEYANCES OF HER INTEREST IN THE PROPERTIES TERMINATED HER TENANCY BY THE ENTIRETIES RIGHTS**

Under 21 U.S.C. § 853(n)(6)(A), relief from forfeiture may be obtained where the petitioner establishes by a preponderance of the evidence that:

> the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section. . . .

Petitioner Subhieh Jebril claims she has such a vested interest in the subject properties as a "tenant-by-the-entireties." Tenants by the entirety, who must be husband and wife, hold under a single title with a right of survivorship. *Matter of Grosslight*, 757 F.2d 773 (6th Cir.1985); *Sanford v. Bertrau*, 204 Mich. 244, 169 N.W. 880 (1918). Neither husband nor wife acting alone can alienate any interest in the property, nor can the creditors of one levy upon the property. *Matter of Grosslight*, 757 F.2d at 773.

In *Rogers v. Rogers*, 136 Mich.App. 125, 356 N.W.2d 288 (1984), the Michigan Court of Appeals described the entireties estate as follows:

> In Michigan real property law, tenancies by the entireties enjoy an ancient and hoary tradition. The usual and durable method for a husband and wife to hold real estate has been as tenants by the entireties. The classic basis for a tenancy by the entireties was the concept that "the husband and wife are but one person in the law". In a true tenancy by the entireties, each spouse is considered to own the whole and, therefore, is entitled to the enjoyment of the entirety and to survivorship. When real property is so held

6

> as tenants by the entireties, neither spouse acting alone can alienate or encumber to a third person an interest in the fee of lands so held. Neither the husband nor the wife has an individual, separate interest in entireties property, and neither has an interest in such property which may be conveyed, encumbered or alienated.
>
> One incident of an estate by the entireties is that the survivor, whether husband or wife, is entitled to the whole and such right cannot be defeated by a conveyance by one spouse to a stranger. Traditionally, tenancies by the entireties could only be created by a written instrument of conveyance, which produced unity of persons, time, title, interest and possession.

356 N.W. 2d at 292-93 (Footnotes omitted).

Thus, under Michigan law, a tenant-by-the-entireties has not only an indivisible interest in the entireties property, but also a survivorship interest which would entitle her to sole ownership of the property upon her husband's death. *Rogers*, 356 N.W.2d at 293. In *United States v. Certain Property Located at 2525 Leroy Lane*, 910 F.2d 343 (6th Cir. 1990), *cert. denied*, 499 U.S. 947 (1991), the Sixth Circuit held that this survivorship interest constitutes a legal interest in the real property which was vested in the petitioner "rather than the defendant" for purposes of 21 U.S.C. § 853(n)(6)(A).

Applying Michigan law, in *Leroy Lane*, the court held that the Government could not forfeit the marital home that was owned by the petitioner, Leah Marks, and Mitchell Marks, the defendant, as tenants by the entireties. Petitioner here contends that *Leroy Lane* controls and as such, maintains that the Government cannot forfeit the subject properties. However, in *Leroy Lane*, it was undisputed that Leah Marks and her husband owned the real property as tenants by the entirety under Michigan law. Here, prior to the

time of the criminal acts that led to Musa Jebril's conviction, the Jebrils had conveyed their interest in the subject property to a third-party. Although it turns out that this third-party was fictitious, these conveyances nonetheless destroyed the entireties estate. *See Leroy Lane*, 910 F.2d at 351 (noting that "the entireties estate may . . . be destroyed through a joint conveyance of the property by husband and wife"); *see also First State Bank of Milford v. Wallace*, 201 Mich. 673, 677 167 N.W. 887 (1918) (fraudulent transfer to third party severed estate by the entireties).

Furthermore, in *Leroy Lane*, the parties stipulated that Leah Marks was an "innocent owner" of the property, within the meaning of the forfeiture statutes. *Leroy Lane*, 910 F.2d at 345. Here, the Government does not so stipulate, and as the court noted in *Leroy Lane*, "a heavy burden [is] placed upon claimants to prove their innocent ownership status." *Id.* at 348.

To avoid forfeiture under the "innocent owner" defense, a property owner must prove by a preponderance of the evidence that criminal activity on the property occurred without his or her knowledge or consent. *See* 21 U.S.C. § 881(a)(7). *See also*, *United States v. Two Parcels of Property*, 31 F.3d 35 (2nd Cir. 1994). Subhieh Jebril has not even attempted to make such a showing. Furthermore, the Government's evidence tends to indicate that Subhieh Jebril was not an "innocent owner" as she was a participant in the fraudulent conveyances of the properties to the fictitious "Sobhie Said Salem."

The foregoing discussion demonstrates that Petitioner Subhieh Jebril has failed to

establish that she is entitled to judgment as a matter of law.

## CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Petitioner Subhieh Jebril's Motion for Summary Judgment is DENIED.

                              s/Gerald E. Rosen
                              Gerald E. Rosen
                              United States District Judge

Dated: May 6, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 6, 2008, by electronic and/or ordinary mail.

                              s/LaShawn R. Saulsberry
                              Case Manager